UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> BERKLEY ASSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 19-cv-8775 <br><br> JURY DEMAND |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Hunt Construction Group, Inc. ("Hunt") respectfully files this complaint against Berkley Assurance Company ("Berkley"). In support hereof, based on personal knowledge with respect to its own actions and information and belief with respect to the remaining allegations, Hunt states as follows:

**INTRODUCTION**

1. This litigation marks the latest chapter in Berkley's pattern of wrongful denial of claims Hunt has submitted to Berkley pursuant to Professional Liability insurance policies Berkley issued to Hunt between 2016 and 2018. Both claims at issue herein arise out of allegations of Professional Negligence against Hunt—a type of claim that is squarely covered by the Policies. With respect to the first claim, just as it did with respect to the claim at issue in a litigation already pending between the parties in this Court, Civil Action No. 1:19-cv-02879 (the "Co-Pending Litigation"), Berkley initially accepted coverage, only to reverse its position

1

months later based on belated and meritless arguments.  With respect to the second claim, Berkley denied coverage out of hand, based on a facially untenable reading of the complaint in the underlying litigation—a reading that, given the nature of Hunt's business, would make coverage illusory.

2. After spending months trying to come to a global business resolution with Berkley, which would resolve the Co-Pending Litigation and the disputes at issue here, Hunt has no choice but to seek a judicial resolution to protect its contractual rights and stem unnecessary expenses Berkley has inflicted on Hunt.

## THE PARTIES

3. Hunt is an Indiana company with its principal place of business in Indiana.  Hunt, now known as AECOM Hunt, has been in the construction business for nearly 75 years.  Among other things, Hunt acts as a General Contractor for large projects, which requires it to coordinate and supervise large teams of subcontractors to ensure the timely completion of projects.

4. Berkley is a Delaware corporation with its principal place of business in Connecticut.  Berkley is a member of the W.R. Berkley Corporation group of insurers, which touts itself as "one of the nation's premier commercial lines property casualty insurance providers."

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on complete diversity of the parties and an amount in controversy exceeding $75,000, exclusive of interest and costs.

6. Venue is proper in this District based upon the terms and conditions of the subject Professional Liability insurance policies, which require the parties to submit to the jurisdiction of a New York court and provides that the dispute will be governed by New York law.

## THE POLICIES

7. There are two Professional Liability insurance policies at issue in this action. As relevant here, each contains materially identical terms.

8. The first policy, PCAB-5000928-0616 (the "2016 Policy"), covered the period June 15, 2016 through June 17, 2018, and provides a $10 million limit of liability. *See* Exhibit A. The term of the 2016 Policy was extended by endorsement to July 15, 2017.

9. The second policy, PCAB-5004319-0618 (the "2018 Policy"), covered the period June 15, 2018 through June 15, 2019, and provides a $10 million limit of liability. *See* Exhibit B.

10. The Insured of the 2016 and 2018 Policies is Hunt.

11. The 2016 and 2018 Policies are collectively referred to herein as "the Policies."[1]

12. The Policies require Berkley to defend the Insureds "against any Professional Claim . . . and pay on [the Insureds'] behalf all Damages and Claim Expenses for that professional Claim in excess of any applicable Self-Insured Retention."

13. The Policies define "Professional Claim" as a "written demand for arbitration or mediation or suit made against you seeking Damages or correction of Professional Services and alleging a negligent act, error or omission in the rendering of or failure to render Professional Services."

---

[1] Hunt has redacted the premium information, which is not material to the parties' dispute.

14. Further, the Policies define "Professional Services" broadly, to include, among other things:

> 1. Construction Management, Program Management, Project Management, Owner's Representation, . . . any delegated design responsibility or design assist services, including but not limited to constructability reviews or value engineering; or
>
> 2. architecture; engineering; contract administration as part of design; . . . mechanical, electrical or security systems design . . .

## THE UNDERLYING LITIGATIONS

15. There are two underlying litigations that give rise to this dispute.

***The Austin Fairmont Project***

16. In 2014, Hunt was hired by Manchester Texas Financial Group, LLC and Manchester Financial Group, LLC (collectively, "MFG") as a General Contractor for the construction of the Fairmont Austin Convention Center.

17. On November 21, 2018, and April 2, 2019, respectively, MFG filed two separate proceedings against Hunt and certain of its affiliates, including AECOM, Inc. and AECOM Tishman f/k/a Tishman Construction. The initial proceeding was filed in the District Court of the 419th Judicial District, Travis County, Texas. The Travis County litigation names only Hunt's affiliates. The second proceeding was an arbitration demand. The arbitration names only Hunt. The two proceedings are collectively referred to herein as "the Austin Fairmont Claim."

18. The Austin Fairmont Claim alleges that, due to Hunt's purported mismanagement of the construction of the Fairmont Austin Convention Center, MFG has sustained a variety of damages, which MFG seeks to recover from Hunt and its affiliates.

19. While Hunt disputes MFG's claims, upon receiving MFG's petition and demand for arbitration, Hunt gave notice to Berkley under the 2018 Policy. Notice was also provided under the 2016 Policy.

20. On February 14, 2019, Berkley accepted coverage under the 2018 Policy for the state court action. While Berkley's acceptance of coverage was made subject to certain conditions and a pro-forma reservation of rights, Berkley did not take the position that Hunt's tender of defense was untimely.

21. On September 11, 2019, through counsel, Berkley informed Hunt that it was reversing its previous coverage determination for the Austin Fairmont Claim under the 2016 Policy, and denying coverage under both Policies. Just as it did in the Co-Pending Litigation, Berkley sought to justify this contractual breach by taking the position that Hunt's notice of claim was untimely because Hunt allegedly had notice of MFG's claims against Hunt long before the construction project was finalized and before MFG sustained any of its alleged damages.

22. Berkley's change in coverage position is baseless and cannot be reconciled with the terms of the 2018 Policy. This is because before the fall of 2018, Hunt had not received any communication that constitutes a Claim under the 2018 Policy, that is, "[i] a written demand for arbitration or mediation or suit made against [Hunt] [ii] seeking Damages or correction of Professional Services and [iii] alleging a negligent act, error or omission in the rendering of or failure to render Professional Services." The 2017 communication upon which Berkley rests its eleventh hour coverage denial falls woefully short of constituting a Claim under the 2018 Policy and, indeed, it is a type of communication General Contractors routinely receive during construction projects.

*The Houston Methodist Hospital Project*

23. In 2015, Hunt was hired as a General Contractor for the construction of a new 20-story building on the campus of Houston Methodist Hospital.

5

24.     In the fall of 2018, Hunt received a demand from a subcontractor, Way Engineering, Inc. ("Way Engineering"), who alleged that, due to Hunt's alleged mismanagement of the Houston Methodist Hospital construction project, Way Engineering has sustained a variety of damages.

25.     While Hunt disputes Way Engineering's claims, upon receiving Way Engineering's demand, Hunt gave notice to Berkley under the 2018 Policy.

26.     On July 8, 2019, Berkley rejected coverage for Hunt's dispute with Way Engineering. Berkley sought to justify this contractual breach by taking the untenable position that Way Engineering's claims against Hunt did not concern the provision of Professional Services. As a fallback position, Berkley asserted that a number of contractual exclusions—none of which have anything to do with Way Engineering's actual allegations—also barred coverage.

27.     On August 15, 2019, Way Engineering filed a petition against Hunt in the District Court of Harris County, Texas (the "Petition"). The Petition repeated allegations Way Engineering raised in the fall of 2018, and provided additional details that further underscore that all of Way Engineering's purported claims stem from assertions of project mismanagement—the very type of Professional Services the 2018 Policy was intended to cover.

28.     For instance, Way Engineered alleged that Hunt improperly:

- "took over and dictated the construction means, sequences and direction of Way's work" (Petition ¶ 18);

- "delayed, disrupted and interfered with Way and its Subcontractors' work" (*id.* ¶ 19)

- "delayed . . . the start and completion of the structure, enclosing and drying-in the building – Bed Tower, the POD installation (Mechanical and Plumbing for the restrooms) and the Project's TECO Chilled Water" (*id.*);

- "delayed the start of the Project's structure – which began six (6) weeks later than planned" (*id.*);

- managed Way personnel and "removed" them from the Project (*id.* ¶ 20);

- "unilaterally changed the Schedule's plan of work and directed Way and its Subcontractors to work out of sequence, moving them to different levels on a regular basis" (*id.* ¶ 22);

- "frequently issued its orders without the knowledge or consent of Way management personnel" (*id.*);

- "demand[ed] unrealistic work schedules" (*id.* ¶ 23);

- "refus[ing] to incorporate Way's schedule comments into [Hunt's] Project schedule updates" (*id.* ¶ 24);

- "controlled all site access to the Project" by "restricting the hours" of elevator use and "prevent[ing] the timely delivery of needed materials" (*id.* ¶ 25);

- "failed to follow the Project's Moisture Control Plan that would prevent rain, precipitation and weather from entering the Project" (*id.* ¶ 26);

- "delayed the Project's dry-in" and "delayed and mismanaged the installation of plumbing or 'PODs' sequencing around the project" (*id.*);

- "demanded that Way and its Subcontractors work incredible amounts of overtime, and increase manpower and crew sizes" (*id.*); etc.

29. Each of these alleged actions fits squarely within the definition of Professional Services set out in the 2018 Policy. Yet even after Hunt provided Way Engineering's Petition to Berkley, Berkley declined to change coverage positions.

## **THE CONSEQUENCES OF BERKLEY'S BAD FAITH CONDUCT WITH RESPECT TO HUNT'S CLAIMS**

30. The consequences of Berkley's refusal to honor its contractual obligations to Hunt have been significant.

31. Despite the fact that Berkley assumed a contractual obligation to defend Hunt, Berkley has failed to advance a single dollar towards Hunt's defense costs.

32. As such, Hunt has been forced to incur millions of dollars in legal fees and

expenses—financial obligations that, under the terms of the Policies, should have rightfully fallen on Berkley.

33. In addition, Hunt has been forced to spend significant internal resources and fees for outside professionals in an effort to persuade Berkley to reverse its untenable coverage positions and honor its contractual obligations to Hunt.

34. Despite Berkley's long pattern of bad faith claim denials, Hunt has spent months attempting to find an amicable resolution of the parties' dispute, only to see its efforts rebuffed.

## COUNT ONE

### (BREACH OF CONTRACT FOR FAILURE TO DEFEND HUNT IN THE AUSTIN FAIRMONT CLAIM)

35. Plaintiff repeats and realleges the allegations contained in the foregoing as if fully set forth herein.

36. The 2016 Policy and 2018 Policy are valid and enforceable contracts under which Plaintiff has an interest.

37. Plaintiff is an Insured under the 2016 Policy and 2018 Policy.

38. The Austin Fairmont Claim constitutes a covered Claim under either or both of the 2016 Policy and 2018 Policy.

39. Plaintiff has given Berkley timely notice under the 2016 Policy and 2018 Policy and has made demands for coverage of the Austin Fairmont Claim.

40. Plaintiff has fully complied with all terms, conditions and prerequisites to coverage set forth in the 2016 Policy and 2018 Policy, or has been excused from compliance with such terms, conditions or prerequisites in connection with the Austin Fairmont Claim.

41. Berkley's rejection of Hunt's claims for coverage under the 2016 Policy and 2018 Policy in connection with the Austin Fairmont Claim constitutes a breach of contract.

42. As a result of that breach, Hunt has been and will continue to be damaged in an amount to be determined at trial.

## COUNT TWO

### (BREACH OF CONTRACT FOR FAILURE TO DEFEND HUNT IN THE WAY ENGINEERING CLAIM)

43. Plaintiff repeats and realleges the allegations contained in the foregoing as if fully set forth herein.

44. The 2018 Policy is a valid and enforceable contract under which Plaintiff has an interest.

45. Plaintiff is an Insured under the 2018 Policy.

46. The Way Engineering Claim constitutes a covered Claim under the 2018 Policy.

47. Plaintiff has given Berkley timely notice under the 2018 Policy and has made a demand for coverage in connection with the Way Engineering Claim.

48. Plaintiff has fully complied with all terms, conditions and prerequisites to coverage set forth in the 2018 Policy, or has been excused from compliance with such terms, conditions or prerequisites in connection with the Way Engineering Claim.

49. Berkley's rejection of Hunt's claim for coverage in connection with the Way Engineering Claim under the 2018 Policy constitutes a breach of contract.

50. As a result of that breach, Hunt has been and will continue to be damaged in an amount to be determined at trial.

## COUNT THREE

### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

51. Plaintiff repeats and realleges the allegations contained in the foregoing as if fully set forth herein.

9

52. The Policies contain an implied covenant of good faith and fair dealing.

53. Pursuant to that covenant, Berkley is required to (i) deal with claims expeditiously and fairly; (ii) refrain from taking meritless coverage positions that fail even the most basic tenants of contractual interpretation and New York insurance coverage precedent; (iii) refrain from changing coverage positions without any basis whatsoever; (iv) not hold hostage Hunt's defense costs in the belief that doing so may persuade Hunt to walk away from the contractual rights Hunt bargained for and obtained; and (v) refrain from unnecessarily inflicting costs—including legal costs—on Hunt by taking unprincipled and downright frivolous coverage positions, let alone tactically switching coverage positions after months of silence.

54. Through the repeated actions and tactics described herein, which have become a familiar pattern, Berkley has breached the covenant of good faith and fair dealing in connection with the Claims at issue herein.

55. As a result of Berkley's breach, Hunt has suffered and will continue to suffer damages in an amount to be determined in this action, including pre- and post-judgment interest.

56. Berkley's bad faith conduct towards Hunt is egregious, willful, and malicious, entitling Hunt to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff request that the Court enter an order and judgment herein:

(i) On Counts One and Two, judgment declaring that Berkley must defend Hunt with respect to the Austin Fairmont and Way Engineering Claims;

(ii) On Count Three, judgment declaring that Berkley has breached the covenant of good faith and fair dealing through its bad faith conduct;

(iii) On all Counts, awarding all costs incurred as a consequence of having to prosecute this lawsuit, including attorneys' fees; and

(iv) On all causes of action, awarding Plaintiff such other and further relief as in law and justice it may be entitled to receive.

Respectfully submitted,

_____

Robin L. Cohen, Esq.
rcohen@mckoolsmith.com
MCKOOL SMITH P.C.
One Bryant Park, 47th Floor
New York, New York 10036
212-402-9400
*Attorneys for Plaintiff*

11