# EXHIBIT 1

# FRAUD NOTICE

*To the extent legally required in a given jurisdiction, certain provisions contained within this document shall be considered part of the Declarations of this Policy.*

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## STATE SPECIFIC PROVISIONS

**Alabama**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof.

**Alaska**
A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**Arizona**
For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California**
For your protection California law requires the following to appear on this form. Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado**
It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of

1

insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**Delaware**  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia**  WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida**  Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Hawaii**  For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

**Idaho**  Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony.

**Indiana**  A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information

---

or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Louisiana**     Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Maine**     It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland**     Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota**     A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire**     Any person who, with a purpose to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey**     Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**New Mexico**     Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York**     Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance

act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio**

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma**

WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

In order for us to deny a claim on the basis of misstatements, misrepresentations, omissions or concealments on your part, we must show that:
A. The misinformation is material to the content of the policy;
B. We relied upon the misinformation; and
C. The information was either:
1. Material to the risk assumed by us; or
2. Provided fraudulently.

For remedies other than the denial of a claim, misstatements, misrepresentations, omissions, or concealments on your part must either be fraudulent or material to our interests.

With regard to fire insurance, in order to trigger the right to remedy, material misrepresentations must be willful or intentional.

Misstatements, misrepresentations, omissions or concealments on your part are not fraudulent unless they are made with the intent to knowingly defraud.

**Pennsylvania**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

---

| | |
|---|---|
| **Puerto Rico** | Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years. |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Texas** | Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

---

## Policyholder Disclosure Notice of Terrorism Insurance Coverage

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in this Policy under any of the coverages provided by this Policy under which the Act obligates us to offer such coverage for acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act.  However, this Policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  The Act contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year.  If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act, is $0, and does not include any charges for the portion of losses covered by the United States Government under the Act.

# PERFORM: DECLARATIONS

| | |
|---|---|
| **Underwriting Company:** | Berkley Assurance Company A+ XV |
| **Administrative Office:** | 7233 E. Butherus Drive<br>Scottsdale, AZ 85260<br>Telephone: 480.951.0905    Fax: 480.951.9730 |
| **Producing Brokerage:** | Insurance Partners, Inc.<br>2950 S. Tibbs Avenue<br>Indianapolis, IN 46241 |
| **Policy Number:** | PCAB-5000928-0616 |
| **Renewal of Policy Number:** | NEW |

**Item 1.**     **Named Insured:**
The Hunt Corporation

**Item 2.**     **Named Insured Mailing Address:**
2450 S. Tibbs Ave.
Indianapolis, IN 46241

**Item 3.**     **Policy Period:**
**Effective Date:** 06/15/2016     **Expiration Date:** 06/15/2017
*(Both dates at 12:01 a.m. local time at the address of the Named Insured)*

**Item 4.**     **Limits of Liability**

| Insuring Agreement | A.<br>Limit of Liability Each Claim or First Party Claim | B.<br>Limit of Liability in the Aggregate for Each Coverage for the Policy |
|---|---|---|
| I.A. | $10,000,000 | $10,000,000 |
| I.B. | $10,000,000 | $10,000,000 |
| I.C. | N/A | N/A |
| I.D. | $5,000,000 | $5,000,000 |
| I.E. | $5,000,000 | $5,000,000 |
| I.F. | N/A | N/A |
| II.A. | $500 each day | $5,000 |
| II.B. | $10,000 | $10,000 |
| II.C. | $10,000 | $10,000 |
| II.D. | $10,000 | $10,000 |
| II.E. | $10,000 | $10,000 |
| II.F. | $10,000 | $10,000 |
| II.G. | $10,000 | $10,000 |
| II.H. | N/A | N/A |

PERFORM-10003-0516                                                                                          Page 1

# PERFORM: DECLARATIONS

    **C.**    Limit of Liability in the Aggregate for All Coverages Described in Section I. of this Policy
for the Policy:  $10,000,000

**Item 5.**    **Self-Insured Retention**

| Insuring Agreement | A. Each Claim or First Party Claim | B. Aggregate | C. Maintenance |
|---|---|---|---|
| I.A. | N/A | N/A | N/A |
| I.B. | $500,000 | N/A | N/A |
| I.C. | N/A | N/A | N/A |
| I.D. | $500,000 | N/A | N/A |
| I.E. | $500,000 | N/A | N/A |
| I.F. | N/A | N/A | N/A |
| 2.H. | N/A | N/A | N/A |

**Item 6.**    **Retroactive Dates**

| Insuring Agreement | Retroactive Date |
|---|---|
| I.A. | 06/15/2005 |
| I.B. | 06/15/2005 |
| I.C. | N/A |
| I.D. | 06/15/2005 |
| I.E. | 06/15/2005 |
| I.F. | N/A |

**Item 7.**    **Premium:**

    Terrorism Risk Insurance Program Reauthorization Act of 2015 Premium:  $0

**Item 8.**    **Forms and Endorsements Applicable to this Policy:**
    See Schedule of Forms and Endorsements

These Declarations along with the Policy Terms and Conditions purchased as part of this Policy shall
constitute the contract between the **Named Insured** and the Insurance Company.

# Schedule of Forms and Endorsements

| Named Insured: The Hunt Corporation | |
|---|---|
| Policy Number:<br>PCAB-5000928-0616 | Policy Period:<br>From:  06/15/2016          To: 06/15/2017 |

| Forms and Endorsements | |
|---|---|
| PERFORM-10001-0516 | *PERFORM* (Contractor's Protective, Professional, Pollution, Cyber, Media and  Mitigation Response Policy) |
| PERFORM-10003-0516 | PERFORM: Declarations |
| BCP-10003-1215 | Service of Suit |
| BCP-10005-1215 | In Witness Provision |
| BCP-10007-1215 | Fraud Notice |
| BCP-10008-0116 | Policyholder Disclosure Notice of Terrorism Insurance Coverage |
| BCP-10009-0116 | Schedule of Forms and Endorsements |
| PERFORM-10004-0116 | Nuclear Energy Liability Exclusion |
| PERFORM-10005-0116 | Terrorism Exclusion Endorsement |
| PERFORM-10006-0116 | Cap on Losses from Certified Acts of Terrorism Endorsement |
| PERFORM-10026-0116 | Reduced Retention Indemnity Endorsement |
| PERFORM-11005-0116 | Deletion of Specified Coverages Endorsement |
| PERFORM-80001-0216 | Notice of Claims and Circumstances Reporting Guidelines |

### PERFORM
### (CONTRACTOR'S PROTECTIVE, PROFESSIONAL, POLLUTION, CYBER, MEDIA AND MITIGATION RESPONSE POLICY)

**NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS PROVISIONS, THIS POLICY APPLIES ONLY TO CLAIMS WHICH ARE FIRST MADE BY OR AGAINST YOU DURING THE POLICY PERIOD OR THE OPTIONAL EXTENDED REPORTING PERIOD, IF APPLICABLE, AND FIRST REPORTED IN WRITING TO US IN THOSE PERIODS OR THE AUTOMATIC EXTENDED REPORTING PERIOD. UNLESS SPECIFICALLY PROVIDED OTHERWISE, CLAIM EXPENSES ARE INCLUDED WITHIN AND REDUCE THE LIMIT OF LIABILITY, AND ARE SUBJECT TO ANY APPLICABLE SELF-INSURED RETENTION.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

Words and phrases that appear in bold print, excluding caption headings, have special meanings that are defined in the Definitions of this Policy.

The words "we," "us" and "our" mean the Insurer listed on the Declarations of this Policy. The words "you" and "your" mean any person or entity described in the Definition of **Insured**.

In consideration of the payment of the premium, and in reliance upon the statements made in the application, materials, and information provided by you, which are incorporated into this Policy, form a part hereof, and are a representation upon which this Policy has been issued, we agree with you as follows:

**I. INSURING AGREEMENT**

    **A. Protective Indemnity**

We shall indemnify you for **Protective Loss** on a **Protective Claim** as established by final judgment or settlement to which we agree in writing, in excess of collectible **Recoverable Insurance**, provided that:

    1. the **Protective Claim** arises out of:

        a. a negligent act, error or omission in the rendering of or failure to render **Professional Services**; or

        b. a **Pollution Condition** resulting from the performance of **Contractor Activities**;

        by the **Responsible Entity** that were rendered or performed on or after the **Retroactive Date** and before the end of the **Policy Period**; and

    2. the **Protective Claim** for such **Protective Loss** is first made by you during the **Policy Period** or Optional Extended Reporting Period, if applicable, and reported in writing by you to us during one of those periods or the Automatic Extended Reporting Period; and

    3. prior to the effective date of the first policy insuring this type of **Protective Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances which could give rise to **Protective Loss**; and

    4. you made all reasonable efforts to recover your **Protective Loss** from the **Responsible Entity**.

    **B. Professional Liability**

We will defend you against any **Professional Claim** (as provided in Section III.A. of this Policy) and pay on your behalf all **Damages** and **Claim Expense** for that **Professional Claim** in excess of any applicable Self-Insured Retention, provided that:

1. the **Professional Claim** arises out of an actual or alleged negligent act, error or omission in the rendering of or failure to render **Professional Services** by you, or by a **Responsible Entity** for whom you are legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; and

2. the **Professional Claim** is first made against you during the **Policy Period** or Optional Extended Reporting Period, if applicable, and reported in writing by you to us during one of those periods or the Automatic Extended Reporting Period; and

3. prior to the effective date of the first policy insuring this type of **Professional Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances which could give rise to a **Professional Claim**.

**C. Contractor Pollution Liability**

We will defend you against any **Pollution Claim** (as provided in Section III.A. of this Policy) and pay on your behalf for all **Pollution Loss** and **Claim Expense** for that **Pollution Claim** in excess of any applicable Self-Insured Retention, provided that:

1. the **Pollution Claim** arises out of an actual or alleged **Pollution Condition** that results from the performance of **Contractor Activities** by you, or by a **Responsible Entity** for whom you are legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; and

2. the **Pollution Claim** is first made against you during the **Policy Period** or Optional Extended Reporting Period, if applicable, and reported in writing by you to us during one of those periods or the Automatic Extended Reporting Period; and

3. prior to the effective date of the first policy insuring this type of **Pollution Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances that could give rise to a **Pollution Claim**.

**D. Cyber Liability**

We will defend you against a **Cyber Claim** and pay on your behalf all **Damages** and **Claims Expense** for the **Cyber Claim** in excess of any applicable Self-Insured Retention, provided that:

1. the **Cyber Claim** arises out of **Contractor Activities** or **Professional Services** performed or rendered by you, or by a **Responsible Entity** for whom you are legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; and

2. the **Cyber Claim** is first made against you during the **Policy Period** or Optional Extended Reporting Period, if applicable, and reported in writing by you to us during one of those periods or the Automatic Extended Reporting Period; and

3. Prior to the effective date of the first policy insuring this type of **Cyber Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances that could give rise to a **Cyber Claim**.

**E. Media and Personal Injury Liability**

We will defend you against any **Media and Personal Injury Claim** and pay on your behalf all **Damages** and **Claim Expense** for that **Media and Personal Injury Claim** in excess of any applicable Self-Insured Retention, provided that:

1. the **Media and Personal Injury Claim** arises out of an actual or alleged negligent act, error or omission in the rendering of or failure to render **Professional Services, Media Activities** or **Information Technology Services** by you, or by a **Responsible Entity** for whom you are legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; and

2. the **Media and Personal Injury Claim** is first made against you during the **Policy Period** or the Optional Extended Reporting Period, if applicable, and first reported in writing by you to us during one of those periods or the Automatic Extended Reporting Period; and

3. prior to the effective date of the first policy insuring this type of **Media and Personal Injury Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances that could give rise to a **Media and Personal Injury Claim**.

### F. Mitigation

We agree to pay you or on your behalf for **Mitigation Cost** in excess of any applicable Self-Insured Retention to mitigate or avoid a **Professional Claim, Pollution Claim, Cyber Claim** or **Media and Personal Injury Claim** that would be covered under this Policy, provided that:

1. the services or other activities you seek to mitigate or rectify were rendered or performed on or after the **Retroactive Date** and before the end of the **Policy Period**; and

2. the circumstances that would reasonably be expected to lead to such **Claim** are first reported in writing by you to us during the **Policy Period**; and

3. prior to the effective date of the first policy insuring such type of potential **Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances that could give rise to a **Claim**; and

4. before incurring any **Mitigation Cost**, you demonstrate to us the reasonableness and necessity of the proposed cost in light of the projected benefit in terms of mitigating or avoiding a covered **Claim**, and we provide our express written consent for such **Mitigation Cost**, such consent not to be unreasonably withheld.

## II. SUPPLEMENTAL COVERAGES

The Limits of Liability for each of the following Supplemental Coverages are separate from the Limits of Liability for the coverages in Section I. Insuring Agreement of this Policy, and payments made under the Supplemental Coverages do not erode the Limits of Liability for those coverages.

### A. Litigation Attendance Reimbursement

Upon written request by you, we shall reimburse you for your actual and documented loss of earnings and reasonable expenses incurred when you attend a hearing, deposition, or trial at our written request, in the course of our defending a **Claim** under this Policy.

### B. Disciplinary Proceedings Defense Expense

Upon written request by you during the **Policy Period**, Automatic Extended Reporting Period or the Optional Extended Reporting Period, if applicable, we will select and retain counsel for you and pay such counsel's reasonable and necessary fees and expenses in defense of a disciplinary proceeding against you before a design professional or contractor licensing board first brought against you during the **Policy Period** or Optional Extended Reporting Period, if applicable, and arising out of either an actual or alleged negligent act, error or omission in the rendering of **Professional Services** or **Pollution Conditions** resulting from the performance of **Contractor Activities**, rendered or performed by or on behalf of you on or after the **Retroactive Date** and before the end of the **Policy Period**.

C.  **Subpoena Defense Expense**

Upon written request by you during the **Policy Period,** Automatic Extended Reporting Period or the Optional Extended Reporting Period, if applicable, we will select and retain counsel for you and pay such counsel's reasonable and necessary fees and expenses to advise and represent you regarding the production of documents and during the preparation for and giving of testimony, in response to a subpoena in a proceeding other than a **Claim** against you or a **Protective Claim,** that is both first served on you and reported to us in writing during the **Policy Period** or the Optional Extended Reporting Period, if applicable, and arising from **Professional Services** or **Pollution Conditions** resulting from the performance of **Contractor Activities,** rendered or performed by or on behalf of you on or after the **Retroactive Date** and before the end of the **Policy Period.**

D.  **ADA and FHA Defense Expense**

Upon written request by you during the **Policy Period,** Automatic Extended Reporting Period or the Optional Extended Reporting Period, if applicable, we shall select and retain counsel and pay such counsel's reasonable and necessary fees and expenses incurred when you respond to regulatory or administrative actions first brought against you during the **Policy Period** by a government agency under the Americans with Disabilities Act of 1990 (ADA) or the Fair Housing Act (FHA), and alleging a negligent act, error or omission in the rendering of **Professional Services** by or on behalf of you, provided that such **Professional Services** were rendered on or after the **Retroactive Date** and before the end of the **Policy Period.**

E.  **Corporate Reputation Rehabilitation**

Upon written request by you, we shall pay on behalf of you the reasonable and necessary fees and expenses subsequently incurred by a public relations firm approved by us to restore your corporate reputation that is damaged as a result of a **Claim** that we defend under this Policy or circumstances for which we consent to the incurring of **Mitigation Cost** or **Emergency Expense** under this Policy. We have the right to require for approval of the public relations firm minimum professional certifications and qualifications (e.g., Examination for Accreditation in Public Relations, or Accredited Business Communicator from International Association of Business Communicators).

F.  **Protective Claim Bankruptcy Litigation Expense Reimbursement**

Upon written request by you, we shall reimburse you for the reasonable and necessary fees and expenses of retaining bankruptcy counsel in the making of a **Protective Claim** arising out of **Professional Services** that qualifies for coverage under this Policy against a **Responsible Entity** who has filed for or been put into bankruptcy under the United States Bankruptcy Code, provided that the **Protective Claim,** at least in part, is allowed as against or results in a judgment against the **Responsible Entity** in your favor, which is final and no longer subject to objection or appeal.

G.  **Building Information Modeling - Extra Expense**

Upon written request by you during the **Policy Period,** Automatic Extended Reporting Period or the Optional Extended Reporting Period, if applicable, we shall reimburse you for the reasonable and necessary additional expense payable to a third party software consulting company, not otherwise recoverable from any warrantee or guarantee, arising from loss of or damage to any information due to inherent malfunction of any software used in connection with any Building Information Modeling system purchased from a third party vendor and not modified by you or on your behalf, including but not limited to erroneous calculations or modeling, provided that the malfunction is first discovered during the **Policy Period** and after the system has been put to its intended use in the course of actual construction.

**H. Emergency Expense**

We will indemnify you for **Emergency Expense** in excess of the Self-Insured Retention, if applicable, provided that the **Emergency Expense** must be both incurred by you and reported to us, in writing and as soon as practicable, during the **Policy Period**, but no later than ten (10) days from the discovery of the **Pollution Condition** resulting from the performance of **Contractor Activities**, or the expiration of the **Policy Period**, whichever occurs first, and provided that the **Contracting Activities** giving rise to the need for **Emergency Expense** were rendered or performed on or after the **Retroactive Date** and before the end of the **Policy Period**.

## III. DEFENSE, SETTLEMENT AND COOPERATION

### A. Defense (Coverages B, C, D and E)

1. We have the right and duty to defend you against any **Claim** proceeding in the United States or Canada under Coverage B, C, D or E of this Policy:

   a. even if groundless or false;

   b. with counsel of our mutual agreement; and

   for any **Claim** proceeding anywhere else in the world seeking such **Damages** or **Pollution Loss**, we shall have the right, but not the duty, to defend you against such **Claim**. You shall have the duty to investigate and defend such **Claims**, and we will treat all reasonable and necessary fees and expenses paid to others in the course of doing so as **Claim Expense**.

2. If you and we cannot mutually agree upon defense counsel, we shall have the final right to select defense counsel, but we then will allow for a 25% Self-Insured Retention credit, up to a maximum of $25,000 per **Claim**, towards the costs of having you retain your own counsel to monitor the **Claim**. Defense counsel selected by us will have the sole right and responsibility for defending you against the **Claim**.

3. In the event you are entitled by law to retain independent counsel of your choosing to defend you at our expense and you choose to do so, the attorney fee component of **Claim Expense** shall be limited to the average of the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar **Claims** in the community where the **Claim** arose or is being defended. In addition, we may require that the independent counsel possess certain minimum qualifications, which may include that the selected counsel have: (1) at least five years of civil litigation experience defending similar **Claims**; and (2) errors and omissions coverage. You further agree to require your independent counsel to provide us with information concerning the **Claim** in a timely manner, to respond to our requests for information concerning the **Claim**, and to comply with our reporting and billing guidelines.

4. We shall have no obligation to pay any **Claim Expense** or to defend any **Claim** after any applicable Limit of Liability has been exhausted by incurred amounts or by payment, or after deposit or tender of the remaining applicable Limit of Liability into court.

### B. Settlement and Consent (Coverages B, C, D and E)

We have the right to investigate, conduct negotiations concerning and, with your written consent, settle any **Claim** as we deem expedient. If you refuse to consent to a settlement or compromise recommended by us and acceptable to the claimant, then our Limit of Liability under this Policy with respect to such **Claim** shall be reduced to the amount for which the **Claim** could have been settled, including all **Claim Expenses** up to the time we made our recommendation to you.

### C. Settlement (Coverage A)

---

PERFORM-10001-0516

1. We have the right to investigate and participate in all negotiations concerning a **Protective Claim.**

2. You will not settle any **Protective Claim** for which coverage may be sought under this Policy without our written consent, which shall not be unreasonably withheld. We will not pay any **Loss** on a **Protective Claim** settled in part or whole without our consent.

### D. Proactive Resolution of Substantiated Protective Claim (Coverage A)

If you provide us substantiation that satisfies us that the liability of the **Responsible Entities** and the value of your **Protective Loss** are not reasonably disputable and exceed all collectible **Recoverable Insurance**, then upon your written request, we will provide you the following proactive assistance in pursuing recovery for your **Protective Loss**:

1. we will consult with you in the prosecution of your **Protective Claim** and provide our input on strategy for the efficient resolution of the **Protective Claim**;

2. we will attend or otherwise participate in settlement negotiations, including mediations and settlement conferences, for the resolution of the **Protective Claim**;

3. we will assist you in negotiations with representatives for any **Recoverable Insurance**; and

4. if all of your reasonable efforts to recover your **Protective Loss** and the foregoing fail due to the refusal of the **Responsible Entity** or the representatives for **Recoverable Insurance** to settle your substantiated **Protective Claim**, we will pay the portion of your **Protective Loss** in excess of the available collectible **Recoverable Insurance.**

The costs we incur in performing the activities described in Paragraphs 1. through 3., above, shall be borne by us and shall not erode the Limits of Liability described in Section VI. of this Policy.

### E. Your Duties (All Coverages)

As a condition precedent to this insurance, in the event of any **First Party Claim, Claim** or reported circumstance:

1. You shall promptly forward to us all documents that you send or receive in connection with the **First Party Claim, Claim** or circumstance, and you will direct all inquiries regarding a **Claim** or circumstance to us or to our designated attorney.

2. You shall cooperate fully with us and our designees in the investigation, defense and settlement of any **First Party Claim, Claim** or circumstance, the conduct of suit or any other proceeding, and in securing and enforcing any right of contribution, indemnity, or other recovery that you potentially may have; such cooperation includes but is not limited to, when requested, attending any proceedings, assisting in securing and obtaining the attendance and testimony of witnesses, whether in a legal proceeding or in an examination by us; and such cooperation will be without charge to us, except as provided otherwise in the Supplemental Coverage for Litigation Attendance Reimbursement. Such cooperation is agreed by us and you to be in furtherance of our common interest in the **First Party Claim** or **Claim**, such that all such communications shall be protected by all applicable privileges and protections.

3. You shall not voluntarily make any payment, assume or admit any liability, consent to any judgment, settle any **First Party Claim** or **Claim**, or incur any **Claim Expense** or **Mitigation Cost**, for which coverage may be sought under this Policy, without our prior written consent, except for **Emergency Expense**. We shall not be liable for any payment, assumed or admitted liability, consent judgment, settlement, or **Claim Expense** to which we have not

consented. You shall not release or compromise any right you may have with respect to a **First Party Claim** or **Claim** without our prior written consent. We shall not be liable for any **Loss** attributable to a release without such consent.

4. You shall obtain our written consent before exercising any right, assuming any obligation, or making any agreement, with respect to any dispute resolution mechanism or process for a **First Party Claim** or **Claim**, including but not limited to rejecting or demanding arbitration.

## IV. DEFINITIONS

Words stated in the singular will be construed as also being stated in the plural and vice versa. For purposes of this Policy:

**A.** **Advertising** means material which promotes your products, services or business.

**B.** **Bodily Injury** means physical injury, sickness, disease, building-related illness, mental anguish, emotional distress, or shock sustained by any person, including death resulting therefrom. Furthermore, **Bodily Injury** shall extend to include the monitoring of medical conditions.

**C.** **Claim** means **Professional Claim, Pollution Claim, Cyber Claim,** and **Media and Personal Injury Claim.**

**D.** **Claim Expense** means reasonable and necessary fees and costs incurred by us to investigate and defend any **Claim** for which coverage is provided under this policy, including fees and costs charged by adjusters appointed by us to investigate a **Claim**. **Claim Expense** includes reasonable and necessary fees in defending such a **Claim**, for attorneys, investigators, arbitrators, mediators, consultants and expert testimony, as well as court and arbitration costs and expenses, but shall not include any remuneration, salaries, regular or overtime wages, benefits, fees or other payment of directors, officers, managers and employees of you or us, or fees and expenses of independent adjusters. **Claim Expense** also includes premiums for the covered portion of appeal bonds, attachment bonds or any similar bonds; however, we are not obligated to apply for, secure or furnish any such bond.

**E.** **Cleanup Costs** means costs for the investigation, monitoring, or disposal of soil, surface water, groundwater, indoor or outdoor atmosphere or other contamination; clean up, abatement, containment, capping, remediation, or correction of a **Pollution Condition** resulting from the performance of **Contractor Activities**. **Cleanup Costs** also includes **Restoration Costs**.

**F.** **Content** means data, digital code, images, drawings, scents, sounds, tastes, texts or textures.

**G.** **Contractor Activities** means:

1. any general construction, construction management, or environmental activity; or

2. any loading, unloading, delivery or transportation of goods, materials, products, or waste to or from any site at which the activities, described in Paragraph 1. of this Definition, are performed as long as such activity is performed by an entity that is properly licensed and in the business of loading, unloading, delivering or transporting goods, materials, products, or waste; or

3. any operation, use, ownership, or maintenance of a land motor vehicle, off-road motor vehicle, mobile equipment, trailer, semi-trailer, watercraft, aircraft, or rolling stock in connection with the activities described in Paragraph 1. of this Definition; or

4. the use of a **Non-Owned Location**.

**Contractor Activities** also includes Completed Operations. For the purpose of this Policy,

Completed Operations means any of the activities described in Paragraphs 1. through 4. of this Definition that have been completed, including materials, parts or equipment furnished in connection with such work or operations.

**H. Cyber Claim** means a written demand, demand for arbitration or mediation, or suit, made against you seeking money or services due to a **Cyber Security Breach**.

**I. Cyber Security Breach** means any of the following circumstances:

1. the failure to prevent the introduction or transmission of a computer virus or any other malicious code, but only if such computer virus or malicious code affects the data, software, firmware, systems or networks of your clients;

2. the failure to provide your clients with access to your website, or your computer or communications network, when your clients have authorized use of your website, or your computer or communications network;

3. failure to prevent unauthorized access to, or use of, data, software, firmware, systems or networks containing private or confidential information of your client;

4. the destruction, deletion or corruption of your client's electronic data; or

5. failure to prevent the theft, unauthorized or illegal disclosure or loss of your client's information listed below:

   a. an individual, natural person's private **Content**, or

   b. commercial confidential information that resides in or on your hardware devices or data systems, including such information stored on your computer infrastructure system including cloud, remote servers at a co-location or data hosting services or any other data storage not in insureds direct control.

**J. Damages** mean any amounts you are legally obligated to pay.

**K. Emergency Expense** means reasonable and necessary expense, incurred by you, on an emergency basis, to contain, control, mitigate or rectify a **Pollution Condition** resulting from the performance of **Contractor Activities** that is an imminent and substantial endangerment to public health, safety or welfare, or the environment, where the absence of such emergency action being undertaken without delay, further harm to third parties or the environment is imminent.

**L. First Party Claim** means a **Protective Claim** and any other request of us by you for **Mitigation Cost** or for sums arising out of any of the insuring agreements described in the Supplemental Coverage Section of this Policy.

**M. Information Technology Products** means a computer or telecommunication hardware or software product or other electronic product that is used, created, developed or manufactured by or for you, including software updates, service packs and other maintenance releases for such products.

**N. Information Technology Services** means:

1. Consulting on, design of, development of, analysis of, integration of, interface of, modification of and programming of software, hardware, networks, telecommunication systems and electronic or digital devices performed by you or on your behalf for your clients;

2. installation of, training in the use of, support of, servicing of, maintenance of, repair of your

---

Information Technology Products;

3.  marketing of, selling of, licensing of and distribution of **Information Technology Products**;

4.  storage of, warehousing of, mining of and processing of data by you;

5.  managing, operating, administering and hosting **Information Technology Products** for your clients; or

6.  activities performed on your website(s);

but shall not mean **Information Technology Products**.

O.  **Insured** means:

1.  the **Named Insured**; or

2.  any fully owned subsidiary corporations or subsidiary limited liability companies of the **Named Insured**, of any tier, in the past, as now constituted or hereafter constituted, subject to the limitations in Paragraph 9. of this Definition for the newly acquired or formed entities described therein; or

3.  any present or former partner, director, officer, manager, member, shareholder, principal, trustee, or employee of the **Named Insured** solely while acting on behalf of the **Named Insured**, but this Paragraph 3. shall not make any entity an **Insured** solely because of its participation with the **Named Insured** in a legal entity such as a joint venture or limited liability company; or

4.  any **Insured** with regard to its participation in a legal entity, including a joint venture or limited liability company, but solely for the **Named Insured's** legal liability arising out of the performance of **Professional Services**, **Contractor Activities**, **Media Activities** or **Information Technology Services** under the respective legal entity, and such legal entity itself, or any other entity other than an **Insured** that is part of the legal entity, are not **Insureds**; or

5.  with regard to Coverage C only, any client of the **Named Insured**, or other entity or person, that the **Named Insured** is obligated to name as an additional insured on this Policy pursuant to a written contract, agreement, or permit, executed prior to when the **Pollution Claim** was first made, and solely as respects **Pollution Conditions** resulting from the **Named Insured's** performance of **Contractor Activities**; or

6.  any entity which is specifically identified as an **Insured** in the Declarations or by endorsement to this Policy; or

7.  the estate, heirs, executors, shareholders, administrators or legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, or bankruptcy, or the spouse or legal domestic partner of any **Insured**, but only to the extent such **Insured** would otherwise be provided coverage under this Policy while acting solely on behalf of the **Named Insured**; or

8.  any prior entity that has been reported to us prior to when the **First Party Claim** or **Claim** was first made and whose assets, partners, principals, or shareholders were acquired by the **Named Insured**, and for which the **Named Insured** is required to provide liability insurance under a written contract or agreement executed before the **First Party Claim** or **Claim** was first made; or

9.  any entity newly formed or acquired by the **Named Insured** during the **Policy Period** in which the **Named Insured** has more than 50% legal or beneficial interest and over which

the **Named Insured** exercises management or financial control and has agreed in writing to provide insurance for such entity prior to the **First Party Claim** or **Claim** being made. However:

    a.  coverage will only be provided for **First Party Claims** or **Claims** arising out of **Professional Services, Contractor Activities, Media Activities** or **Information Technology Services** performed on or after the date of formation, acquisition, or exercised financial or management control; and

    b.  this coverage will expire within 90 days for such entity, or the end of the **Policy Period**, whichever is earlier, unless the **Named Insured** provides written details of such newly acquired entity to us and pays the additional premium requested by us, if any.

**P.** **Insured Contract** means:

1. a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you, or temporarily occupied by you, with permission of the owner is not an **Insured Contract**; or

2. a sidetrack agreement; or

3. any easement or license agreement; or

4. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or

5. an elevator maintenance agreement; or

6. that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage,** or **Pollution Loss** to a third party or organization. This section does not include that part of any contract or agreement that indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

    a.  Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    b.  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

For the purpose of this section, tort liability means only that liability that would be imposed by law in the absence of any contract or agreement. Any assumption of liability beyond that of tort liability specified in this Paragraph 6. shall not be considered to be part of the **Insured Contract**.

**Q.** **Loss** means **Protective Loss, Third Party Loss, Mitigation Cost** and any other amount to which you are entitled under any of the insuring agreements described in the Supplemental Coverages Section of this Policy.

**R.** **Media Activities** means **Media Communications** or the gathering, collection, or recording of **Media Material** for inclusion in any **Media Communications** in the ordinary course of your business.

**S.** **Media and Personal Injury Claim** means a written demand, demand for arbitration or mediation, or suit, made against you seeking money or services due to a **Media and Personal Injury Offense**.

**T. Media and Personal Injury Offense** means:

1. Infringement of copyright, piracy, plagiarism or misappropriation or unauthorized use of ideas shared with you in the course of services for your client;

2. Infringement of trade secrets, domain name, title or slogan, or the dilution or infringement of trademark or service mark;

3. act, error or omission regarding the **Content** of any **Media Communication**, including harm caused through any reliance or failure to rely upon such **Content**;

4. Misappropriation of trade secret;

5. Defamation, libel, slander, product disparagement, trade libel, or other tort related to disparagement or harm to the reputation or character of any person or organization;

6. Invasion or interference with the right to privacy or of publicity;

7. Misappropriation of any name or likeness for commercial advantage;

8. False arrest, detention or imprisonment or malicious prosecution; or

9. Invasion of or interference with any right to private occupancy, including trespass, wrongful entry, eviction or eavesdropping;

**U. Media Communications** means the display, broadcast, dissemination, distribution or release of **Media Material** to the public by you.

**V. Media Material** means information in the form of words, sounds, numbers, images or graphics in electronic, print or broadcast form, including **Advertising**, but does not mean computer software or **Content**.

**W. Mediation** means the non-binding facilitation by a neutral third party of **First Party Claim** or **Claim** resolution.

**X. Mitigation Cost** means reasonable and necessary fees or direct costs incurred to mitigate or rectify **Professional Services, Contractor Activities, Media Activities** or **Information Technology Services** that would reasonably be expected to give rise to a **Claim** covered by this Policy, including, in the event of a **Cyber Security Breach**, costs we incur to engage a qualified firm on your behalf to:

1. investigate the **Cyber Security Breach**;

2. notify any parties affected by the **Cyber Security Breach**;

3. perform credit monitoring service for your clients' individual personal data or your clients' corporate data lost because of the **Cyber Security Breach**; and

4. restore or recreate, if possible, any of your clients' lost data caused by the **Cyber Security Breach**.

Your fees or direct costs may be treated as **Mitigation Cost** only with our prior written consent before being incurred, which consent shall not be unreasonably withheld. **Mitigation Cost** does not include any fees or direct costs relating to or resulting from **Emergency Expense**; betterment; or the failure to prevent or detect faulty workmanship.

Y.  **Named Insured** means the individual, partnership, entity, firm, or the company named in Item 1. of the Declarations.

Z.  **Natural Resource Damage** means physical injury to or destruction of (including the resulting loss of value) land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any State or Local government, any Foreign government, any Native American tribe or, if such resources are subject to a trust restriction on alienation, any member of a Native American tribe.

AA. **Non-Owned Location** means:

1. real property rented, leased or managed by you, but only if such real property is utilized on a temporary basis for the storage of goods, materials, products or wastes for the purpose of performing the activities, described in Paragraphs 1. through 3. in Definition G. **Contractor Activities**, for a client; or

2. any location used for the treatment, storage, recycling or disposal of your waste material provided that:

    a. the waste material is generated while performing activities, described in Paragraphs 1. through 3. in Definition G. **Contractor Activities**, for a client; and

    b. the location is not managed, operated, owned or leased by you or any of your subsidiaries or affiliates with the exception of any location that is managed, operated, owned or leased solely by one or more persons or organizations that are **Insureds** only by reason of Paragraph 5. in Definition O. **Insured**; and

    c. the location is permitted or licensed by any Federal, State, Local or Provincial authorities to accept such material as of the date of the treatment, storage, recycling or disposal.

BB. **Policy Period** means the period from 12:01 a.m. on the effective date of this Policy as set forth in Item 3. of the Declarations, to 12:01 a.m. on the earliest of the date of the expiration date of this Policy as set forth in Item 3. of the Declarations or any earlier termination date if this Policy is cancelled.

CC. **Pollution Claim** means the assertion of a legal right alleging liability or responsibility on your part, including but not limited to lawsuits, petitions, arbitrations or other alternative dispute resolutions, and public agency directives, made against you, for **Pollution Loss** arising out of a **Pollution Condition** resulting from otherwise insured **Contractor Activities**.

DD. **Pollution Condition** means the actual or alleged discharge, dispersal, release, seepage, migration, growth or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, mold, mildew, spores, fungi, microbes, bacteria, legionella pneumophila, asbestos, lead, silica, silt, sediment, liquids, gases, waste materials, contaminants, organic or inorganic pollutants, electromagnetic fields, hazardous substances, hazardous materials, waste materials including medical, infectious, and pathological wastes, or other irritants, into or upon land, any structure on land, the indoor or outdoor atmosphere, any watercourse, or any body of water, including groundwater. Waste materials include materials to be recycled, reconditioned or reclaimed. Radioactive matter shall also be considered a pollutant, except as otherwise covered or protected by insurance or protections provided pursuant to 42 U.S.C. § 2014(w), as amended, or Section 170 of the Atomic Energy Act of 1954, as amended.

EE. **Pollution Loss** means any amounts you are legally obligated to pay for **Bodily Injury**, **Property**

**Damage** or **Cleanup Costs**.

**FF. Principal Personnel** means the directors, officers, principals, partners, insurance and risk managers, and those persons responsible for your environmental or legal affairs for the **Named Insured**.

**GG.Professional Claim** means a written demand, demand for arbitration or mediation or suit made against you seeking **Damages** or correction of **Professional Services** and alleging a negligent act, error or omission in the rendering of or failure to render **Professional Services**.

**HH. Professional Services** means:

1. Construction Management, Program Management, Project Management, Owner's Representation, Property Management, Real Estate Brokerage/Agency, Property Development, Lease Brokering, any delegated design responsibility or design assist services, including but not limited to constructability reviews or value engineering; or

2. architecture; engineering; contract administration as part of design; sprinkler design; fire protection design; life safety design; mechanical, electrical or security systems design; light use, acoustical or signage design; landscaping design; surveying; quantity surveying; project accounting, quality control reviews, assist or documentation, material testing; cost consulting, economic, feasibility, technical consulting or technical studies or opinions, or scientific reviews; software design for the purpose of operating or maintaining any building system; interior design or space planning services; or design services to support Leadership in Energy and Environmental Design (LEED) certification for a project; or

3. professional services with respect to any Building Information Modeling (BIM) systems, including but not limited to modification, alteration, transfer, protection, manipulation, use, or misuse thereof, or design assist system or program, and the foregoing within Integrated Project Delivery (IPD), Public-Private Partnership projects (P3s), or Lean Project Delivery System (LPDS); or

4. environmental consulting, environmental engineering, environmental site assessment, remedial investigations, feasibility studies, remedial design, environmental monitoring, testing and sampling, remedial oversight and management, ecological studies, environmental training, industrial hygiene, forensic inspections and expert witness services; or

5. ordinary technology services utilized in the performance of the Professional Services described above. Such technology services include the design, development, programming, analysis, training, use, hosting, management, support, and maintenance of any software, database, internet service, or website.

**II. Property Damage** means:

1. physical injury to or destruction of tangible property, including resulting loss of use thereof; or

2. loss of use of tangible property that has not been physically injured or destroyed; or

3. diminution of property value; or

4. **Natural Resource Damage**.

**JJ. Protective Claim** means written demand, demand for arbitration or mediation or a suit instituted by you against the **Responsible Entity** seeking a remedy and alleging liability or responsibility on the part of such **Responsible Entity** arising from:

1. a negligent act, error or omission in the rendering of or failure to render **Professional Services**; or

2. a **Pollution Condition** resulting from the performance of **Contracting Activities**.

**Protective Claim** does not include a demand or proceeding for non-monetary or injunctive relief.

KK. **Protective Loss** means:

1. any amounts you are legally entitled to recover; or

2. in the event the **Protective Claim** is made against a **Responsible Entity** in whose favor you have granted a Limitation of Liability permitted by this Policy, any amounts you would have been legally entitled to recover in the absence of such Limitation of Liability;

from each **Responsible Entity**:

1. due to a negligent act, error or omission in the rendering of **Professional Services**; or

2. for **Bodily Injury**, **Property Damage** or **Cleanup Costs** due to a **Pollution Condition**.

In the event that multiple **Responsible Entities** cause the same or related loss, the amount of **Protective Loss** shall not exceed the single loss caused by such multiple **Responsible Entities**.

LL. **Recoverable Insurance** means:

1. all available liability insurance providing applicable coverage to any **Responsible Entity** or any person or entity for which the **Responsible Entity** is responsible; or

2. in the event the **Protective Claim** is made against a **Responsible Entity** in whose favor you have granted a Limitation of Liability permitted by this Policy, such Limitation of Liability.

MM. **Responsible Entity** means those persons or entities, retained by you or on your behalf, rendering **Professional Services** or **Contractor Activities**.

NN. **Restoration Costs** means the reasonable and necessary costs incurred by you, with our prior written consent, to repair, replace, or restore real or personal property to substantially the same condition it was prior to being damaged during work performed in the course of incurring **Cleanup Costs**. **Restoration Costs** do not include costs associated with improvements or betterments.

OO. **Retroactive Date(s)** means the date(s) set forth in Item 6. of the Declarations.

PP. **Third Party Loss** means the total of all **Damages** and **Pollution Loss** you are legally obligated to pay, and all related **Claim Expense**.

V. **EXCLUSIONS**

We will not be liable to make payments or indemnify you for any **First Party Claim**, **Claim** or **Loss** directly or indirectly for or arising out of:

A. any amounts incurred in connection with the making or prosecution of a **Protective Claim**. This Exclusion applies at all times, including where we are providing Proactive Resolution of Substantiated Protective Claim under Section III.D. of this Policy, excepting only the Supplemental Coverage for Protective Claim Bankruptcy Litigation Expense Reimbursement.

B. the amount of any default judgment, arbitration award or adjudicator's decision in circumstances where the **Responsible Entity** has failed to plead or provide a defense, response or answer,

or take any other procedural step, except that this Exclusion shall not apply to the amount of **Protective Loss** which you would have been entitled to recover from the **Responsible Entity**, respectively, had such defense, response or answer been pleaded or provided, or procedural step been taken.

In such instance where the **Responsible Entity** has failed to plead or provide a defense, response or answer, or take any other procedural step, the burden of proving the extent of **Protective Loss** which you would have been entitled to recover from the **Responsible Entity**, respectively, will be upon you.

**C.** any design or manufacture of any goods or products which are sold or supplied by you or by anyone under license to you, including any parts, components, assemblies or equipment installed or incorporated by or on behalf of you into your work. This Exclusion does not apply to (1) software sold or supplied by you in connection with your provision of other **Professional Services**, or (2) goods or products installed or incorporated in your work which have been specially designed, but not manufactured, by you or on your behalf by a qualified **Responsible Entity** for use in a specific project, or (3) goods or products installed or incorporated in your work that cause a **Pollution Loss** arising out of a **Pollution Condition** resulting from the performance of **Contractor Activities**, or (4) **Information Technology Products.**

**D.** the cost to repair or replace faulty workmanship in any construction, erection, fabrication, installation, assembly, or manufacturing process, including materials, parts, or equipment furnished in connection therewith, unless the faulty workmanship is caused by otherwise covered **Professional Services** as respects the applicability of:

1. Coverages A or B; or
2. **Mitigation Cost** to mitigate or rectify **Professional Services** under Coverage F, except for any fees and direct costs relating to or resulting from the failure to prevent or detect faulty workmanship.

This Exclusion does not apply to Coverages C, D, E, **Mitigation Cost** to mitigate or rectify a **Pollution Condition** resulting from the performance of **Contractor Activities** under Coverage F, or Supplemental Coverage H. Emergency Expense.

**E.** any actual or alleged harassment, humiliation, discrimination, or similar misconduct on any basis, whether as to a legally protected group or otherwise.

**F.** any employment obligations, decisions, conduct, practices or policies as an employer, including but not limited to any obligation for which any party shall be liable under any worker's compensation, unemployment compensation, employer's liability, obligation to pay fair wages or benefits, or disability benefits law or under any similar law.

**G.** liability under contract, agreement, warranty or guarantee, except such liability that would have existed in the absence of such contract or agreement. This Exclusion extends to any contractual obligation to make payments to others, including subcontractors, subconsultants, or their employees, or for materials. Solely for purposes of Coverage C, this Exclusion shall not apply to liability of others assumed under an **Insured Contract**.

**H.** any fraudulent, criminal, dishonest, intentionally or knowingly wrongful, or malicious act, error, or omission, or those of an inherently harmful nature, except that this Exclusion shall not apply to a **Claim** against you if you did not commit, participate in, or have knowledge of such conduct.

**I.** taxes; criminal fines; criminal penalties; or liability for liquidated damages you or the **Responsible Entity** would not have had in the absence of the agreement for liquidated damages.

**J.** any return, withdrawal or reduction in contractor charges; any equitable obligation, including restitution, disgorgement, or the costs of complying with injunctive relief; or the time and

expense in addressing or resolving an actual or potential **First Party Claim** or **Claim**.

**K.** any conduct by an individual, corporation, partnership, or joint venture of which you are a partner, director, officer, member, participant, or employee that is not designated in the Declarations or by endorsement as an **Insured**.

**L.** **First Party Claims** or **Claims** made by any **Insured** against any other **Insured**. However, this Exclusion shall not apply as respects **Claims** made by any entity or person only qualifying as an **Insured** under Paragraph 5. of the Definition of **Insured** in this Policy.

**M.** **Claims** against you made by, or **Protective Claims** by you made against, any individual or entity, or its subrogees or assignees:

1. that wholly or partially owns, controls or operates you; or

2. in which you have an ownership interest in excess of twenty-five percent (25%); or

3. that is controlled or operated by you; or

4. in which you are an officer or director; or

5. that is an affiliate of you, where you both are ultimately owned in excess of twenty-five percent (25%), directly or indirectly, by the same entity.

With respect to Items 2., 3., and 4. above, this Exclusion shall be limited when the **Claim** or **Protective Claim** is made by a formal joint venture partnership of which you are a participant to your percentage of ownership interest in the joint venture, so that we shall only be responsible for that portion of **Third Party Loss** or **Protective Loss** that is the difference between your percentage of ownership interest and the total joint venture ownership interest percentage.

**N.** **Bodily Injury** or **Property Damage** arising out of construction means, methods or techniques; site safety; crane erection, use, maintenance or operation; scaffolding; or demolition, but solely for the purposes of Coverage B, and for the purposes of Coverages A and F with respect to obligations arising from **Professional Services**.

**O.** any **Loss** caused by or resulting from war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection, military or usurped power, martial law, or confiscation by order of any government or public authority.

**P.** any **Protective Loss** or **Pollution Loss** resulting from:

1. the discovery of a **Pollution Condition** on, at or under the **Non-Owned Location**; or

2. a **Pollution Condition** on, at, under or migrating from a **Non-Owned Location**, for which the owner of the **Non-Owned Location** becomes legally obligated to pay unless such **Pollution Loss** results from the performance of the activities described in Paragraphs 1. through 3. of Definition G. **Contractor Activities**.

**Q.** for purposes of Coverages D and E, the loss, theft, destruction, transfer, misappropriation, or any misuse of any of your employees' personal data, confidential information or other private **Content**, including but not limited to social security numbers, phone numbers, family names, family history, or home or medical information.

**R.** any **Professional Services**, **Contractor Activities**, **Media Activities**, or **Information Technology Services** that constitute violations of either the laws of the United States or any jurisdiction in which they were performed, including U.S. economic, trade sanction or export control laws administered by the U.S. Treasury, State and Commerce Departments (e.g., the economic and trade sanctions administered by the U.S. Treasury Office of Foreign Assets Control), or the U.S. Controlled Substances Act or similar laws in the subject jurisdiction.

Additionally, we shall not be required to provide any coverage, pay any **Claim** or **First Party Claim**, or provide any other benefit hereunder to the extent that provision of such coverage, payment of such **Claim** or **First Party Claim** or provision of such other benefit would be in violation of any trade or economic sanctions laws or regulations applicable in our jurisdiction of domicile or with which we are legally obligated to comply.

## VI.   LIMITS OF LIABILITY AND SELF-INSURED RETENTION

### A.  Limits of Liability

1. Limit of Liability Each **Claim** or **First Party Claim**: Our Limit of Liability for the sum of all **Loss** for each single **Claim** or **First Party Claim** to which this Policy applies shall not exceed the amount stated in Item 4.A. of the Declarations specified for each applicable coverage provided by this Policy.

2. Limit of Liability in the Aggregate for Each Coverage for the Policy: Our Limit of Liability for all **Loss** under each respective coverage provided by this Policy shall not exceed the amount stated in Item 4.B. of the Declarations for such coverage for the Policy.

3. Limit of Liability in the Aggregate for All Coverages Described in Section I. of this Policy for the Policy:  Our Limit of Liability for the sum of all **Loss** arising out of all **Claims** or **First Party Claims** under the coverages described in Section I. provided by this Policy shall not exceed the amount stated in Item 4.C. of the Declarations for the Policy.

### B.  Self-Insured Retention

The Self-Insured Retention amount stated in Item 5.A. of the Declarations applies to each **Claim** or **First Party Claim**, if applicable.  The Self-Insured Retention amount stated in Item 5.B. of the Declarations is the most you shall pay for the sum of all of your Self-Insured Retention obligations arising out of all **Claims** or **First Party Claims** under each respective coverage for the Policy, if applicable, provided that in no event shall your Self-Insured Retention obligation be less than the amount state in Item 5.C. of the Declarations for any **Claim** or **First Party Claim** under each respective coverage.  The Self-Insured Retention amount shall be paid by you before we pay any **Loss**, though any payments made by any **Recoverable Insurance** also implicated by the **Claim** or **First Party Claim** shall serve to reduce your Self-Insured Retention obligation.  Our Limits of Liability set forth in Item 4. of the Declarations are in addition to and in excess of the Self-Insured Retention amount.  No Self-Insured Retention amount shall apply with respect to the Supplemental Coverages provided by the Policy, except for Supplemental Coverage H. Emergency Expense.  If a **Claim** arising out of the same set of circumstances for which we have paid **Mitigation Cost** is made, then any amounts paid under the Self-Insured Retention for such **Mitigation Cost** shall reduce the Self-Insured Retention for that **Claim**.

Mediation Credit:  If you and we agree beforehand to attempt to resolve a **Claim** or **First Party Claim** at **Mediation**, and if you and we resolve such **Claim** or **First Party Claim** by such **Mediation**, your Self-Insured Retention obligation for such **Claim** or **First Party Claim** will be reduced by 50%, subject to a maximum reduction of $25,000.

## VII.   MULTIPLE INSUREDS

The number of **Insureds** covered by this Policy shall not operate to increase the Limit of Liability specified in the Declarations, notwithstanding any other provision of this Policy.

## VIII.   MULTIPLE CLAIMS

Two or more **Claims** or **First Party Claims** arising out of one or more acts, errors, omissions, incidents, events, or **Pollution Conditions**, or a series thereof, that are related (either causally or logically), will be considered a single **Claim** or **First Party Claim** subject to:

**A.** a single Each **Claim** or **First Party Claim** Limit of Liability; and

**B.** a single Self-Insured Retention (if applicable); and

shall not operate to increase our Limits of Liability. All such **Claims** or **First Party Claims** treated as a single **Claim** or **First Party Claim**, whenever made, shall be considered first made on the date the earliest such **Claim** or **First Party Claim** was first made, and only a Policy providing coverage for the earliest **Claim** or **First Party Claim** shall have any coverage for such **Claims** or **First Party Claims.**

If more than one Coverage applies to the whole or a part of a **Claim** treated as a single **Claim** pursuant to this Section VIII., then the Each **Claim** Limit of Liability for the entirety of that single **Claim** and the applicable Self-Insured Retention for that single **Claim** shall be those set forth in Items 4.A. and 5., respectively, of the Declarations for the applicable Coverage with the largest Each **Claim** Limit of Liability. If more than one applicable Coverage has the same Each **Claim** Limit of Liability, but have different Self-Insured Retentions, then the largest Self-Insured Retention shall apply to that single **Claim.**

## IX. EXTENDED REPORTING PERIOD

### A. Automatic Extended Reporting Period

If we or you terminate or non-renew this insurance for any reason, other than nonpayment of premium or your failure to comply with any term or condition, or fraud or material misrepresentation, you shall be entitled to a period of sixty (60) days from the date of policy termination to report a **Claim** or **First Party Claim** which is made by or against you prior to such termination date. This Automatic Extended Reporting Period may not be canceled by you and does not require the payment of an additional premium. This Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period if such is purchased. The Automatic .Extended Reporting Period shall not serve to increase or reinstate the Limits of Liability set forth in the Declarations. The Aggregate Limit of Liability for the Automatic Extended Reporting Period shall be the amount of coverage remaining in this Policy's aggregate liability limit set forth in the Declarations.

### B. Optional Extended Reporting Period

If we or you terminate or non-renew this insurance for any reason, other than nonpayment of premium, your failure to comply with any material term or condition, fraud or material misrepresentation, and if the total premium for this Policy has already been paid in full, then you shall have the option to pay an additional premium and extend the period by which a **Claim** or **First Party Claim** can be first made by or against you and reported to us.

The premium for the Optional Extended Reporting Period shall be: (1) 100% of the annual premium for twelve (12) months of extension; (2) 150% for twenty-four (24) months of extension; or (3) 200% for thirty-six (36) months of extension. The purchase of an Optional Extended Reporting Period shall not be effective unless endorsed herein.

Your right to purchase the Optional Extended Reporting Period must be exercised by notice in writing to us no later than sixty (60) days after the cancellation or termination date of this Policy. Effective notice must indicate the total Optional Extended Reporting Period desired and must include payment of premium for such period. If such notice and premium are not mailed to us within such sixty (60) days, then you are not entitled to purchase an Optional Extended Reporting Period at a later date.

At the commencement of any Optional Extended Reporting Period, the entire premium shall be deemed fully earned. In the event you terminate the Optional Extended Reporting Period before its term for any reason, we shall not be obligated to return any portion of the premium.

Although the period during which a **Claim** or **First Party Claim** can be reported to us is extended

by virtue of the Optional Extended Reporting Period, this fact shall not in any way increase or reinstate the Limits of Liability of this Policy.  The Optional Extended Reporting Period shall not serve to increase or reinstate the Limits of Liability set forth in the Declarations.  The Aggregate Limit of Liability for the Optional Extended Reporting Period shall be the amount of coverage remaining in this Policy's aggregate liability limit set forth in the Declarations.

## X.    REPORTING

### A.  Reporting a Claim or First Party Claim

As a condition precedent to coverage under this Policy, in the event of a **Claim** or **First Party Claim**, you must do the following:

1. Report the **Claim** or **First Party Claim** to us in writing as soon as reasonably possible, which must be during the **Policy Period**, the Automatic Extended Reporting Period, or during any applicable Optional Extended Reporting Period.  Reporting should be sent to us at the address stated in the Claims Notice attached to this Policy; and

2. Promptly provide a copy of the **Claim** or **First Party Claim**, if in writing, and specify in the report: the names and addresses of the **Insured** reporting the **Claim** or **First Party Claim**, the persons or entities making the **Claim** or **First Party Claim**, and the persons or entities against whom the **Claim** or **First Party Claim** is made; when the **Claim** or **First Party Claim** was made; the subject of the **Claim** or **First Party Claim**; and any other relevant facts or allegations known to you.

### B.  Reporting a Circumstance

If during the **Policy Period**, you become aware of a circumstance that may reasonably be expected to give rise to a **Claim** or **First Party Claim** which may be covered under the Policy, and if you, during the **Policy Period**, provide a written report to us at the address stated in the Claim Notice attached to this Policy of the circumstance as soon as practicable containing particulars sufficient to identify you and all reasonably obtainable information with respect to:

1. when and how you first became aware of such circumstance;

2. any act, error, omission or **Pollution Condition** asserted or believed to be at issue;

3. the services or activities involved in the circumstance;

4. what happened and the dates and entities involved; and

5. the nature of any alleged or potential **Loss**;

then any **Claim** or **First Party Claim** arising out of such circumstance shall be deemed to have been made on the date we received the written report of the circumstance.  At our sole discretion and cost, we may elect to investigate any circumstance which is reported; any such costs associated with the investigation of a circumstance prior to a **Claim** being made against you will not be considered **Claim Expense**, will not reduce the applicable Self-Insured Retention and shall be paid by us in addition to the Limit of Liability.

## XI.    CONDITIONS

### A.  Territory

The coverage afforded by this Policy applies worldwide.

### B.  Audit and Inspection

---

Upon reasonable prior notice, we shall be permitted to audit your final books and records at any time during the **Policy Period**, the Automatic Extended Reporting Period, the Optional Extended Reporting Period, if applicable, and within three years after the final termination of this Policy, as far as they relate to the subject matter of this Policy. We shall also be permitted to inspect, sample, and/or monitor your operations on a continuing basis. Neither our right to make inspections, sample, and/or monitor, nor the actual undertaking thereof, nor any report thereon shall constitute an undertaking, on behalf of us or others, to determine or warrant that your operations are safe, healthful, conform to acceptable practice, or are in compliance with any law, rule, or regulation.

**C. Subrogation**

In the event of any payment under this Policy, we shall be subrogated to all of your rights of recovery thereof. You shall execute and deliver all requested instruments and papers in furtherance of such rights to us and do whatever else is reasonably necessary to secure such rights. You shall do nothing to waive or prejudice such rights. We shall have priority in any recovery, and any amounts recovered in excess of our total payment and the cost to us of recovery shall be paid to you. However, we waive our rights of subrogation under this Policy against your clients or their designees (except for a **Responsible Entity**) to the extent such a waiver is required by a written contract with you executed prior to the **Claim**.

For Coverage A only, we will not subrogate against a **Responsible Entity** in excess of its collectible insurance, provided it has maintained **Recoverable Insurance,** regardless of whether or not such **Recoverable Insurance** is exhausted or reduced.

**D. Changes**

None of the provisions of this Policy will be waived, changed, or modified except by written endorsement issued by us to form a part of this Policy. Notice to any of our agents or knowledge possessed by any such agent or any other person will not act as a waiver or change in any part of this Policy and will not prevent us from asserting any rights under the provisions of this Policy.

**E. Action Against Us**

Only you can make claims against us under Coverages A and F, and the Supplemental Coverages, of this Policy.

No action shall be taken against us with respect to Coverage A unless, as a condition precedent thereto, you shall have fully complied with all the terms of this Policy, and until the amount the **Responsible Entity** is legally obligated to pay shall have been finally determined either by judgment after actual contested trial or arbitration, or other method of dispute resolution for which we have given prior written approval.

No action shall be taken against us with respect to Coverage B, C, D or E unless, as a condition precedent thereto, you shall have fully complied with all the terms of this Policy, and until the amount you are legally obligated to pay shall have been finally determined either by judgment after actual contested trial or arbitration, or other method of dispute resolution for which we have given prior written approval.

No person or organization shall have any right under this Policy to join us in any action against you. No **Responsible Entity** shall be an **Insured** under this Policy.

**F. Assignment of Interest**

It is agreed that the insurance provided herein and your interests hereunder cannot be transferred or assigned to another party without our express written consent.

### G.  Cancellation and Termination

1.  The premium paid for this Policy shall be fully earned in the first twelve months of the **Policy Period**.

2.  This Policy may only be cancelled by us for one or more of the following  reasons:

    a.   non-payment of premium; or
    b.   a material misrepresentation or concealment of facts; or
    c.   a material breach of any provision of this Policy.

    If this Policy is cancelled by us, notice of cancellation will be sent in writing to you, at the address indicated on the Declarations.  We will provide such written notice at least ninety (90) days prior to the date such cancellation is to take effect; except that, in the event of cancellation for non-payment of premium, we will provide only fifteen (15) days written notice. If the premium is paid by a premium financing company and the premium financing company, acting under a valid premium finance agreement with you, requests cancellation of the Policy due to non-payment of premium from you in the first twelve (12) months of the **Policy Period**, the earned premium shall be computed short-rate of  the twelve-month earned policy term premium and returned to the premium finance company.

    The effective date and hour of cancellation will be stated in such notice. Cancellation by us also cancels the Automatic Extended Reporting Period and any Optional Extended Reporting Period; the **Policy Period,** the Automatic Extended Reporting Period, and any Optional Extended Reporting Period will end on that date.  If we cancel for the reason specified in Subparagraph (a), there shall be no return premium. If we cancel for reasons stated in Subparagraphs (b) or (c) in the first twelve (12) months of the **Policy Period,** the earned premium shall be computed pro-rata of the twelve-month earned policy term premium. Payment of any return premium shall not be a condition of cancellation.

3.  This Policy may be cancelled by the first **Named Insured** for any reason.  In the  event that the first **Named Insured** cancels the Policy, the earned premium shall be computed under the customary short rate table and procedure as a percentage of the total Policy premium stated in the Declarations, and we will return the earned premium to the first **Named Insured**. Cancellation by the first Named Insured shall also cancel the Automatic Extended Reporting Period and any Optional Extended Reporting Period on the date of cancellation.

4.  Notwithstanding the foregoing, if you report a **Claim** or **First Party Claim** to us prior to the date of cancellation, the Policy premium shall be considered 100% earned, and no premium shall be returned upon cancellation.

### H.  No Limitation of Liability

You shall not limit the liability of any **Responsible Entity**, except to collectible insurance, without our prior written approval.

### I.   Your Bankruptcy

Your bankruptcy or insolvency shall not relieve us of our obligations  under this Policy.

### J.   Authorization Clause

By acceptance of this Policy, the first **Named Insured** shall be the sole agent of and shall act on behalf of the **Insureds** for all purposes as to the Policy, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, providing and receiving notice of cancellation, termination, or nonrenewal, the

giving of notices and reporting of **First Party Claims**, **Claims** and circumstances, for completing applications and the making of any statements or representations, for making any change to the Policy, and for the exercising or declining to exercise any right under this Policy, including the purchase of an Optional Extended Reporting Period.

**K.   Severability of Policy Provisions**

If any material provision or clause of this Policy is declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, that provision will immediately become null and void, leaving the remainder of this Policy in full force and effect.

**L.   Severability of Insureds (Coverages B, C, D and E)**

Except with respect to the Limits of Liability and Self-Insured Retentions, the Authorization Clause of this Conditions Section and as otherwise provided in this Policy, this insurance applies as if each **Insured** were the only **Insured** and separately to each **Insured** against whom a **Claim** is made.

**M.   Other Insurance**

This Policy is excess over the Self-Insured Retention and any other valid and collectible liability insurance available to you, whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent, self-insured or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy number in this Policy's Declarations. When any other insurance has a duty to defend a **Claim**, we will have no duty to defend the **Claim**; if no such other insurance defends the **Claim**, we will have the right but not the duty to defend the **Claim**.

Under Coverage C only, when you are required by written contract, written agreement, or permit, executed prior to when the **Pollution Claim** was first made, to include any person or entity as an additional **Insured**, such coverage will be provided on a primary and non-contributory basis to the extent so required.

**N.   Choice of Law**

All matters arising from or related to this Policy, including without limitation questions related to the validity, interpretation, performance, and enforcement of this Policy, all forms of contractual, tort and statutory claims, and all remedies and entitlement to costs or attorneys' fees in a dispute over any of the foregoing, shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

**O.   Jurisdiction and Venue**

It is agreed that, in the event of any dispute arising from or related to this Policy, including without limitation questions related to the validity, interpretation, performance, and enforcement of this Policy, and all forms of contractual, tort and statutory claims, you and we will submit to the jurisdiction of any court (State or Federal) in New York and will comply with all the requirements necessary to give such court jurisdiction.   Nothing in this clause constitutes or should be understood to constitute a waiver of your or our right to remove an action to the United States District Court, regardless of the jurisdiction in which an action is commenced.

# SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, "suit" or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such "suit" may be made upon Janet Shemanske, or her nominee of the Company at 7233 East Butherus Drive, Scottsdale, Arizona 85260 and that in any "suit" instituted against any one of them upon this policy, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

## In Witness Provision – Berkley Assurance Company

IN WITNESS WHEREOF, Berkley Assurance Company, domiciled at 11201 Douglas Avenue, Urbandale, IA 50322 and with administrative offices at 7233 E. Butherus Drive, Scottsdale, AZ 85260, has caused this Policy to be signed by its President and Secretary.

\
\
\

| | |
|---|---|
| W. Robert Berkley, Jr. | Ira S. Lederman |
| President | Secretary |
| Berkley Assurance Company | Berkley Assurance Company |

---

# Nuclear Energy Liability Exclusion Endorsement

In consideration of the premium paid, it is understood and agreed that Section V. Exclusions is amended by adding the following:

- **Damages or Loss:**
  - a. with respect to which you are also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  - b. resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which:
    1. any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or
    2. you are, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

  - c. resulting from **Hazardous Properties** of **Nuclear Material**:
    1. if the **Nuclear Material**:
       - i. is at any **Nuclear Facility** owned by, or operated by or on behalf of, you; or
       - ii. has been discharged or dispersed therefrom;
    2. if the **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of you; or
    3. arising out of your furnishing of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**.

Section IV. Definitions is amended by adding the following, but solely for the purposes of this Endorsement:

- **Hazardous Properties** includes radioactive, toxic or explosive properties.

- **Nuclear Material** means **Source Material**, **Special Nuclear Material** or **By-product Material**.

- **Source Material**, **Special Nuclear Material**, and **By-product Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

- **Spent Fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

- **Waste** means any waste material:
  - a. containing **By-product Material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content; and
  - b. resulting from the operation by any person or organization of any **Nuclear Facility** included under the first two paragraphs of the definition of **Nuclear Facility**.

- **Nuclear Facility** means:
  - a. any **Nuclear Reactor**;
  - b. any equipment or device designed or used for:
    1. separating the isotopes of uranium or plutonium;
    2. processing or utilizing **Spent Fuel**; or
    3. handling, processing or packaging **Waste**;

---

PERFORM-10004-0116

Page 1

   c.   any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in your custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   d.   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

- **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. The information below is required only when this endorsement is issued subsequent to preparation of the Policy.

| Insured: | Insurance Company: |
|---|---|
| Endorsement Effective Date: | Policy Number: |
| Endorsement Number: | Premium: |

PERFORM-10004-0116                                         Page 2

# Terrorism Exclusion Endorsement

In consideration of the premium paid, it is understood and agreed that Section V. Exclusions is amended by adding the following:

- except as respects **First Party Claims, Claims** or **Losses** under any Insuring Agreement provided by this Policy under which the Terrorism Risk Insurance Program Reauthorization Act of 2015 obligates us to offer coverage for Acts of Terrorism, as defined by such legislation, any **Act of Terrorism**, regardless of any other cause or event contributing concurrently or in any other sequence to the loss, including without limitation, loss, damage, cost or expense of any nature directly or indirectly caused by, resulting from, or in connection with any action taken in controlling, preventing, suppressing, or in any way relating to the foregoing.

Section IV. Definitions is amended by adding the following:

- **Act of Terrorism** means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization (s) or government (s), committed for political, religious, ideological or similar purposes, including the intention to influence any government and/or to put the public or any section of the public in fear.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.   The information below is required only when this endorsement is issued subsequent to preparation of the Policy.

| | |
|---|---|
| Insured: | Insurance Company: |
| Endorsement Effective Date: | Policy Number: |
| Endorsement Number: | Premium: |

PERFORM-10005-0116                                                                                     Page 1

# Cap on Losses from Certified Acts of Terrorism Endorsement

In consideration of the premium paid, it is understood and agreed that Section V. Exclusions is amended by adding the following:

- solely as respects **First Party Claim**, **Claims** or **Losses** under any Insuring Agreement provided by this Policy under which the Terrorism Risk Insurance Program Reauthorization Act of 2015 obligates us to offer coverage for Acts of Terrorism, as defined by such legislation, and if aggregate insured losses attributable to such Acts of Terrorism exceed $100 billion in a Calendar Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Program Reauthorization Act of 2015, any portion of the amount of such losses that exceeds $100 billion, and insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. The information below is required only when this endorsement is issued subsequent to preparation of the Policy.

| Insured: | Insurance Company: |
|---|---|
| Endorsement Effective Date: | Policy Number: |
| Endorsement Number: | Premium: |

PERFORM-10006-0116                                                                                              Page 1

## Reduced Retention Indemnity Endorsement

In consideration of the premium paid, it is understood and agreed that Section VI.B. Self-Insured Retention is amended by adding the following:

> If a **Claim** is made against you by any person, firm or organization to whom a Certificate of Insurance has been issued, which specifies a lesser Self-Insured Retention amount than the Self-Insured Retention amount stated in Item 5. of the Declarations, the Self-Insured Retention amount applicable to such **Claim** shall be the lesser Self-Insured Retention amount. You agree to indemnify us for the difference between the lesser Self-Insured Retention amount and the Self-Insured Retention amount stated in Item 5. of the Declarations, and to promptly reimburse us for all costs, expenses, and attorney's fees which may be incurred by enforcing this indemnity agreement.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.   The information below is required only when this endorsement is issued subsequent to preparation of the Policy.

| Insured: | Insurance Company: |
|---|---|
| Endorsement Effective Date: | Policy Number: |
| Endorsement Number: | Premium: |

PERFORM-10026-0116 

Page 1

## Deletion of Specified Coverages Endorsement

In consideration of the premium paid, it is understood and agreed that Section I. Insuring Agreement and(or) Section II. Supplemental Coverages are(is) amended by deleting the coverage(s) specified in the table, below, in their respective entireties.

Additionally, all terms and conditions of this Policy that pertain to any coverage(s) scheduled in the table, below, are also deleted, but only to the extent such provisions pertain to such coverages.

| Insuring Agreement |
| --- |
| I.C. Contractor Pollution Liability |
| I.F. Mitigation |
| II.H. Emergency Expense |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.  The information below is required only when this endorsement is issued subsequent to preparation of the Policy.

| Insured: | Insurance Company: |
| --- | --- |
| Endorsement Effective Date: | Policy Number: |
| Endorsement Number: | Premium: |

PERFORM-11005-0116

Page 1

# Claims or Circumstance Reporting Guidelines

These guidelines should be followed to help Berkley Construction Professional Underwriters (BCP) provide efficient claim management services.

**Reporting a Claim**

When reporting a **Claim** (as defined in Section X. Reporting, Item A. Reporting a Claim or First Party Claim of your Policy) please:

1. Promptly report the **Claim** to us in writing.

2. Provide sufficient information to identify you, the claimant, the project and issues.

3. Immediately forward to us every demand, notice, summons or other process including institution of arbitration proceedings that you receive.

4. Provide reasonably attainable information with respect to the time, place and circumstances of the **Claim** and the names and addresses of available witnesses.

5. Provide contact information (name, email address and phone number for the **Insured** contact).

**Reporting a Circumstance**

When reporting a circumstance (as defined in Section X. Reporting, Item B. Reporting a Circumstance of your Policy) please:

1. Report the circumstance to us in writing during the **Policy Period.**

2. Provide the following information in your written notice:

   a. when and how you first became aware of such circumstance;

   b. any act, error, omission, **Pollution Condition** (to the extent this policy provides coverage for such **Pollution Conditions** on a Claims Made basis), **Biological Condition** (solely in the event this Policy provides an insuring agreement named Biological Pollution Liability), or **Site Pollution Condition** (solely in the event this Policy provides an insuring agreement named Site Pollution Liability for Insured Property) asserted or believed to be at issue;

   c. the services or activities involved in the circumstance;

   d. what happened and the dates and entities involved; and

   e. the nature of any alleged or potential **Loss.**

Please provide copies to your insurance broker of all claim notices and correspondence sent to Berkley Construction Professional Underwriters.

**Where to Send Circumstance and Claim Notices**

All circumstance and claim notices shall be sent to Berkley Construction Professional Underwriters- Claims Department. The notices must be reported as required by the policy to avoid problems regarding timely notice.

The claims reporting email address for the BCP Claims Department is: BCPclaims@BerkleyCP.com